FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2005 DEC -2 AM 10: 02

CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| WILLIAM H. LUMPKIN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | CV 104-196 |
| ) | |
| STEPHEN UPTON, Warden, ) | |
| ) | |
| Respondent. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner, William H. Lumpkin, has filed a petition for a writ of habeas corpus under Title 28, United States Code, Section 2254. Petitioner also has filed a motion for an evidentiary hearing, Doc. 15, a motion for protective order, Doc. 16, a motion for miscellaneous relief, Doc. 29, a motion for partial summary judgment, Doc. 30, another motion for partial summary judgment, Doc. 35, a motion for sequestration and preservation of biological, physical, and documentary evidence, Doc. 40, and a motion for discovery, Doc. 43. Respondent has filed a motion to dismiss the petition. Doc. 18. For the reasons that follow, the Court **REPORTS** and **RECOMMENDS** that respondent's motion to dismiss be **GRANTED**, that petitioner's motions be **DENIED**, that the underlying petition be **DISMISSED**, and that a final judgment be **ENTERED** in favor of respondent.

## I. BACKGROUND

On February 23, 1999, a jury sitting in the Superior Court of Richmond County convicted petitioner of malice murder, felony murder, and theft by taking. One day after the jury's verdict, petitioner entered into a plea agreement under which he agreed to waive his right to file an appeal of his conviction and to file for post-conviction relief in exchange for the State's recommendation that he receive a sentence of life without parole plus ten years. The State was otherwise prepared to seek the death penalty in the sentencing phase of the trial. On February 24, 1999, the sentencing judge accepted the State's recommendation under the plea agreement and entered a sentence of life without parole plus ten years. Petitioner did not appeal the sentence.

Petitioner filed under the Georgia state habeas corpus statute on November 1, 1999, citing forty separate grounds for relief. The Chattooga County Superior Court held an evidentiary hearing on September 25, 2002. On February 24, 2003, the court entered an order dismissing petitioner's habeas petition on the ground that he knowingly and voluntarily waived his right to seek post-conviction relief in his plea agreement. The court did not address directly any of petitioner's grounds for relief unrelated to the waiver issue. Petitioner appealed the order, but the Georgia Supreme Court denied the appeal on September 28, 2004.

Among the grounds for relief raised by petitioner in his state habeas petition was an asserted conflict of interest that existed between himself, his counsel for the sentencing phase of his trial, and his former lead trial counsel. Petitioner averred that Terry Jackson, his lead trial counsel until one month prior to his trial, had an extramarital affair with his wife. Because of the allegations of the affair and Jackson's unrelated health problems, Jackson

2

withdrew as counsel at a January 14, 1999, hearing. Prior to the hearing, the court conducted an *in camera* review of documents supporting the existence of the extramarital affair. At the hearing, the court allowed Jackson to withdraw and be replaced by Michael Garrett as lead counsel. Jackson's poor health was the only reason for the withdrawal cited explicitly by the court. Garrett represented petitioner at trial and Michael Mears represented him at sentencing.

After the jury returned a guilty verdict, Mears entered negotiations with the State to avoid the potentiality of a death sentence. Mears, who had more than 20 years of experience in criminal defense, anticipated that the jury's guilty verdict on petitioner's malice murder charge was an indication that the jury was poised to return a death sentence at the sentencing phase of the trial. The aforementioned agreement was the product of Mears's plea negotiations.

Petitioner claimed in his state habeas petition that Mears acted in the interest of protecting the integrity of Jackson after learning of his extramarital affair, and that Mears's interest in protecting Jackson conflicted with his representation of petitioner. According to petitioner, Mears did not adequately inform him of Jackson's extramarital affair with his wife.[1] If he had been aware of the details of the affair, petitioner claims he would not have entered into the plea agreement. The state habeas court rejected petitioner's claim and found his plea agreement to be knowingly and voluntarily entered into.

Petitioner filed this Section 2254 petition on December 15, 2004, in the United States

---

[1] Petitioner concedes, however, that Mears did notify him of the allegations of the affair in a general manner prior to his trial.

3

District Court for the Northern District of Georgia.[2] The petition subsequently was transferred to this Court on December 27, 2004. Petitioner raises the same forty grounds for relief that he raised in his state habeas petition. Respondent filed a motion to dismiss on March 21, 2005, seeking dismissal on the ground that petitioner waived his right to seek post-conviction relief in his plea agreement.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, signed into law on April 24, 1996, amended Section 2254(d) to provide:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court addressed Section 2254(d) in Williams v. Taylor, 529 U.S. 362, 404 (2000). The Court explained:

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court. Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) *"contrary to* . . . clearly established Federal law, as determined by the Supreme Court of

---

[2] Petitioner previously has filed two other Section 2254 petitions. Lumpkin v. Thompkins, CV 100-168 (S.D. Ga. Oct. 16, 2000); Lumpkin v. Thompkins, CV 101-145 (S.D. Ga. May 17, 2002). Both petitions were dismissed without prejudice.

> the United States," or (2) *"involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."*

Id. at 404-05 (emphasis added).

The Eleventh Circuit has explained the difference between the "contrary to" and "unreasonable application" clauses in § 2254(d)(1) as follows:

> A state court decision is "contrary to" clearly established federal law if either (1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case.
> A state court conducts an "unreasonable application" of clearly established federal law if it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case. An unreasonable application may also occur if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context. Notably, an "unreasonable application" is an "objectively unreasonable" application.

Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001) (internal citations omitted). Thus, a habeas petition may be granted if "the state court's decision was contrary to, or involved an objectively unreasonable application of, the governing Federal law set forth by Supreme Court cases." McIntyre v. Williams, 216 F.3d 1254, 1257 (11th Cir. 2000).

Section 2254(e)(1) sets a highly deferential standard of review for state court factual determinations. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Fugate v. Head, 261 F.3d 1206, 1215 (11th Cir. 2001) (citations omitted); see also Crawford v. Head, 311 F.3d 1288, 1317 (11th Cir. 2002) (affirming state court factual determination "because there is support for it in the

5

record and [the petitioner] has not rebutted the finding by clear and convincing evidence"). Moreover, "some evidence suggesting the possibility" that a petitioner's version of the pertinent facts is correct is not sufficient to carry the burden of showing that a state court made an unreasonable determination of fact as contemplated by Section 2254(d)(2). Bottoson v. Moore, 234 F.3d 526, 540 (11th Cir. 2000).

### III. RESPONDENT'S MOTION TO DISMISS

#### A.     Post-Conviction Relief Waiver

Respondent moves to dismiss the petition on the ground that petitioner waived his right to seek post-conviction relief under the terms of his plea agreement, the same ground on which the state court dismissed petitioner's habeas claims. The plea agreement provides, in pertinent part, that petitioner

> waives any rights of appeal to the process and procedure in this case, of the verdict of the jury, of the entry of judgement [sic] thereon, of his plea of guilty and conviction thereon, and of the sentence of the Trial Court. Said waiver shall include the rights of direct appeal, and any post-conviction, or collateral attack upon the verdict, guilty plea or sentence, pursuant [to] Article I, Section 9 or the 4th, 5th, 6th, 8th, and 14th amendments to the Constitution of the United States and any corresponding provisions of the Constitution of the State of Georgia.

Resp. Ex. 10. In exchange for petitioner's waiver of appeal and post-conviction relief rights, the State agreed not to seek the death penalty against him and instead to recommend a sentence of life without parole plus ten years. Id.

At petitioner's February 24, 1999, sentencing hearing, the court ordered the courtroom cleared and conducted a colloquy with petitioner regarding the plea agreement.

The court advised petitioner that the plea agreement contained a waiver of "all rights that [the court] can think of, including rights to appeal . . . ." Petitioner told the court that he understood the terms of the agreement. Resp. Ex., Sent. Tr. at 3, 4.

The court then asked the jury to return to the courtroom and again conducted a colloquy with petitioner. Petitioner admitted the facts set forth in his indictment and expressed his satisfaction with the performance of his attorneys. The court then asked petitioner,

> You also waive including any rights of direct appeal, any post conviction or collateral attack upon the verdict, guilty plea, or sentence pursuant to Article I, Section IX, of the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments of the Constitution of the United States and any corresponding provisions of the constitution of this state?

Petitioner responded affirmatively. Resp. Ex., Sent. Tr. at 14. The Court subsequently found petitioner's waiver of his rights to appeal and post-conviction relief to be "knowing and intelligent." Resp. Ex., Sent. Tr. at 17.

Respondent, relying on Allen v. Thomas, 265 Ga. 518 (1995), argues that petitioner's waiver of his right to seek post-conviction relief forecloses the instant Section 2254 petition. In Allen, the Georgia Supreme Court held that the validity of such waivers only can be challenged collaterally on the ground that the underlying plea agreement was not knowingly and voluntarily entered into. Id. at 519. Because the state trial court and state habeas court found petitioner's plea agreement to be knowingly and voluntarily entered into, the terms of the agreement, according to respondent, are enforceable and petitioner is precluded under the agreement from filing for post-conviction relief.

Petitioner responds that ineffective assistance of counsel may serve to deprive a

7

defendant of a sufficient understanding of a plea agreement, rendering the agreement unenforceable. Petitioner accordingly argues that he should be allowed to seek relief under Section 2254 on ineffective assistance of counsel grounds despite the waiver language in his plea agreement.

On the issue of whether a post-conviction relief waiver extends to claims of ineffective assistance of counsel generally, the Eleventh Circuit recognized in Williams v. United States, 396 F.3d 1340 (11th Cir. 2005), that "every Circuit to have addressed the issue has held that a valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing." Id. at 1342. The court followed the rule of its sister circuits, noting that "a contrary result would permit a defendant to circumvent the terms of the sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless." Id.; accord United States v. White, 307 F.3d 336, 341-44 (5th Cir. 2002); Garcia-Santos v. United States, 273 F.3d 506, 508-09 (2d Cir. 2001); Davila v. United States, 258 F.3d 448, 451-52 (6th Cir. 2001); United States v. Cockerham, 237 F.3d 1179, 1183-87 (10th Cir. 2001); Mason v. United States, 211 F.3d 1065, 1069-70 (7th Cir. 2000).

The Williams court, however, noted that "there may be a distinction between a § 2255 claim of ineffective assistance in entering or negotiating the plea versus a claim of ineffectiveness at sentencing or a claim challenging the validity of the plea or agreement." Williams, 396 F.3d at 1342 n.2. Other circuits, recognizing such a distinction, have held that

8

an ineffective assistance of counsel claim survives a waiver if it challenges directly the validity of the plea agreement or the waiver language in the plea agreement. See Washington v. Lampert, 422 F.3d 864, 871 (9th Cir. 2005) (holding that "a plea agreement that waives the right to file a federal habeas petition pursuant to 28 U.S.C. § 2254 is unenforceable with respect to an [ineffective assistance of counsel] claim that challenges the voluntariness of the waiver"); United States v. White, 307 F.3d 336 (5th Cir. 2002) ("[A] waiver of appeal may not be enforced against a section 2255 petitioner who claims that ineffective assistance of counsel rendered that waiver unknowing or involuntary."); United States v. Cockerham, 237 F.3d 1179, 1187 (10th Cir. 2001) ("[W]e hold that a plea agreement waiver of postconviction rights does not waive the right to bring a § 2255 petition based on ineffective assistance of counsel claims challenging the validity of the plea or the waiver."); DeRoo v. United States, 223 F.3d 919, 924 (8th Cir. 2000) ("A defendant's plea agreement waiver of the right to seek section 2255 post-conviction relief does not waive defendant's right to argue, pursuant to that section, that the decision to enter into the plea was not knowing and voluntary because it was the result of ineffective assistance of counsel."); Jones v. United States, 167 F.3d 1142 (7th Cir. 1999) ("Justice dictates that a claim of ineffective assistance of counsel in connection with the negotiation of a cooperation agreement cannot be barred by the agreement itself–the very product of the alleged ineffectiveness."); Vaca-Ortiz v. United States, 320 F.Supp.2d 1362, 1365 (N.D. Ga. 2004) ("[T]he court notes that a criminal defendant could not waive the right to bring a claim for ineffective assistance of counsel in which he alleges ineffectiveness at the time he was entering the plea or ineffectiveness related to advice he received regarding the waiver.").

The Court is persuaded by the rationale of courts recognizing the distinction between ineffective assistance of counsel claims directed at the knowing and voluntary nature of a defendant's acceptance of a plea and ineffective assistance of counsel claims that challenge other aspects of counsel's performance, such as trial strategy. When a defendant's counsel renders advice to his client in an unprofessional or otherwise errant manner during the negotiation and acceptance of a plea agreement, an ineffective assistance of counsel claim directed at such advice imperils the validity of the plea agreement, and by extension the waiver, itself. Because a defense attorney's performance at the time of plea negotiation and counseling goes to the question of whether a plea agreement is entered into in a knowing and voluntary manner, a defendant's challenge to the plea agreement based on ineffective assistance of counsel should not be barred by the terms of the agreement itself. Accordingly, the Court maintains jurisdiction over petitioner's ineffective assistance of counsel claims relating to the negotiation and acceptance of his plea agreement.[3] Because petitioner's right to file for post-conviction relief hinges on that threshold issue, the Court will limit its analysis at the outset to that issue.

**B. Ineffective Assistance of Counsel**

The Court now turns to whether petitioner's counsel in fact performed ineffectively in advising him to accept the plea agreement. In <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984), the Supreme Court created a two-part test for determining whether a defendant

---

[3]To the extent that the state habeas court held otherwise, the Court finds its holding to be error. While the state habeas court did disagree with petitioner's argument that his ineffective assistance of counsel claims survive the plea waiver, the court also addressed the substance of petitioner's ineffective assistance claim. Thus, if the state habeas court erred on the plea waiver issue, its subsequent language addressing petitioner's ineffective assistance claims, which were based on an asserted conflict of interest, renders the error harmless.

10

received ineffective assistance of counsel. First, a defendant must demonstrate that his attorney's performance was deficient, which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. Second, a defendant must demonstrate that the deficient performance prejudiced the defense to such a degree that the results of the trial cannot be trusted. Id.

Under the first prong, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. Strickland, 466 U.S. at 690. The petitioner must carry a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689 (citation omitted).

Under the prejudice prong, a petitioner must establish that there is a reasonable probability that the results would have been different but for counsel's deficient performance. Kimmelman v. Morrison, 477 U.S. 365, 375 (1986); Strickland, 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

Petitioner's ineffective assistance of counsel claim is founded on an asserted conflict of interest that existed between Mears, himself, and Jackson. According to petitioner, Mears acted in the dual and competing interests of protecting Jackson's integrity and providing competent representation to petitioner. Petitioner claims that he was not adequately advised by Mears of the extramarital affair between his wife and Jackson, and that if he had been so

11

advised, he would not have waived his rights to appeal and post-conviction relief. According to petitioner, the potential for a conflict of interest claim relating to Jackson in the preparation of his case would have compelled him to risk the death penalty in order to preserve his appellate and post-conviction relief rights.

In order to show ineffective assistance of counsel premised on a conflict of interest, a petitioner must "establish that an actual conflict of interest adversely affected his lawyer's performance." Cuyler v. Sullivan, 446 U.S. 335, 350 (1980). "[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief. But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." Id. (citations omitted).

The Supreme Court clarified the Sullivan rule for post-conviction conflict of interest claims in Mickens v. Taylor, 535 U.S. 162 (2002). There, the Court observed that lower courts had interpreted Sullivan to relieve petitioners from showing that their counsel's deficient performance had a probable effect on the outcome of the trial, Strickland's prejudice prong, where a mere potential conflict of interest existed. Courts

> have applied Sullivan "unblinkingly" to "all kinds of alleged attorney ethical conflicts." They have invoked the Sullivan standard not only when . . . there is a conflict rooted in counsel's obligations to *former* clients, but even when representation of the defendant somehow implicates counsel's personal or financial interests, including a book deal, a job with the prosecutor's office, the teaching of classes to Internal Revenue Service agents, a romantic "entanglement" with the prosecutor, or fear of antagonizing the trial judge.
>
> It must be said, however, that the language of Sullivan does not clearly establish, or indeed even support, such expansive application.

12

Id. at 174 (emphasis in original) (citations omitted). The Court continued by clarifying that Sullivan and its progeny only relieve a petitioner of showing prejudice where counsel "actively represents" conflicting interests, such as when counsel represents jointly charged defendants at the same time. Id. at 174-75.

Otherwise, a petitioner must "establish that the conflict of interest adversely affected his counsel's performance." Id. at 174; see Hunter v. Secretary, Dept. of Corrections, 395 F.3d 1196 (11th Cir. 2005) (holding that in situations other than those involving concurrent representation, "there is no Sixth Amendment violation, and thus no reversal, absent a showing that an actual conflict of interest adversely affected counsel's performance"). "In order to prove adverse effect, a petitioner must show (1) a plausible alternative defense strategy that counsel might have pursued; (2) that the alternative strategy was reasonable; and (3) some link between the actual conflict and the decision to forego the strategy." Brownlee v. Haley, 306 F.3d 1043, 1064 n.17 (11th Cir. 2002).

Here, the state habeas court applied the Sullivan-Mickens rule and concluded that this case does not involve counsel's concurrent representation of defendants and that petitioner's counsel performed reasonably under the circumstances. Resp. Ex., Final Order at 10. The Court finds that the state court correctly applied the appropriate Supreme Court standard and that its factual findings were reasonable. Upon learning of the alleged extramarital affair between Jackson and petitioner's wife, Mears first sought advice from the ethics office at the State Bar of Georgia. Based on that advice, Mears discussed the allegations with petitioner, leaving the details of the alleged affair for petitioner and his wife to discuss. Mears also

approached Jackson with the allegations and convinced Jackson to withdraw from the case. Mears then arranged a hearing with the trial judge wherein Jackson was replaced by substitute counsel. The judge, at Mears's request, conducted an *ex parte*, *in camera* review of documents prior to the hearing because attorney-client issues were involved. The state habeas court found Mears to have performed adequately on those facts, and this Court concurs.

The alternative defense strategy that petitioner may have pursued on Mears's advice presumably would have been to proceed with the sentencing phase of his trial, and thereby risk receiving the death penalty, in order to retain the right to pursue ineffective assistance claims against Jackson on appeal and in post-conviction proceedings. Petitioner, however, fails to show any link between such a defense strategy and a conflict of interest, or even that an actual conflict of interest existed at the time of his sentencing. Petitioner's theory that Mears's alleged desire to protect Jackson's integrity constituted a cognizable conflict of interest at any time during his legal proceedings is dubious at best. That such a conflict would have affected Mears's advice to petitioner more than a month after Jackson was removed from the case appears even less likely.

Furthermore, petitioner, a seasoned defense attorney himself, already was aware of the factual basis that would underlie the defense strategy he now says he would have taken. Petitioner knew, by his own admission, of the general allegations of the extramarital affair prior to his trial. Knowledge of the particulars of the affair, or an admission of the affair from his wife, would not substantially alter petitioner's perception of the availability of ineffective assistance claims against Jackson on appeal or collateral review. Petitioner knew

14

at the time of his plea of the potentiality for such claims, and he chose instead to follow the advice of Mears. Mears anticipated that petitioner would receive the death penalty if he did not enter into the plea agreement. Petitioner accepted Mears's advice, entered into the plea agreement, and benefitted from the plea agreement when the State's sentencing recommendation did not include the death penalty.

In summary, the Court concurs with the state habeas court's determination that Mears performed adequately under the circumstances. Further, petitioner has not sufficiently illustrated a cognizable conflict of interest or any link between any conflict of interest and the advice that Mears rendered with regard to the plea agreement. Finally, petitioner possessed an *a priori* knowledge of the basic facts that would underlie a decision not to enter into a plea agreement apart from the advice of Mears.

Petitioner has met neither the performance nor the prejudice prongs of the Strickland standard. He has shown neither that his counsel performed ineffectively nor that any conflict of interest adversely affected his counsel's performance at the time he entered into the plea agreement. Accordingly, the Court **RECOMMENDS** that respondent's motion to dismiss, Doc. 18, be **GRANTED**.[4]

## IV. PETITIONER'S MOTIONS

Petitioner has filed a motion for an evidentiary hearing, Doc. 15, a motion for protective order, Doc. 16, a motion for miscellaneous relief, Doc. 29, a motion for partial

---

[4]Because the Court finds petitioner's plea agreement to be knowingly and intelligently entered into and his right to file under Section 2254 accordingly waived, the Court will not address the individual claims raised in his petition.

summary judgment, Doc. 30, another motion for partial summary judgment, Doc. 35, a motion for sequestration and preservation of biological, physical, and documentary evidence, Doc. 40, and a motion for discovery, Doc. 43. Because the Court has recommended that respondent's motion to dismiss be granted, the Court also **RECOMMENDS** that petitioner's motions be **DENIED** as moot.

## V. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that respondent's motion to dismiss be **GRANTED**, that petitioner's motions be **DENIED**, that the petition for habeas corpus relief be **DISMISSED,** and that a final judgment be **ENTERED** in favor of respondent.

SO REPORTED and RECOMMENDED this 2nd day of ~~November~~ December, 2005, in Augusta, Georgia.

_____
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

16